UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Magistrate No. 24-92 |
| ) | **[UNDER SEAL]** |
| TIMOTHY ALLEN TRESSLER ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Williams, being duly sworn, state as follows:

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) in Erie, Pennsylvania, and have been so employed for approximately 6 years. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, U.S.C. § 2501(7). That is, an officer of the United States, who is empowered by law to conduct investigations of, and make arrests for, offenses against the United States.

2. I have successfully completed the Criminal Investigator Training Program (CITP) and the HSI Special Agent Training Program (HSISAT) at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and have experience in the investigation and prosecution of violations of immigration, customs (import/export), financial, narcotics, and other federal criminal laws.

3. I am familiar with the facts and circumstances set forth herein through my personal participation in this investigation and based on information provided by other law enforcement agents/officers from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), United States Postal Inspection Service (USPIS), United States Customs and Border Protection (CBP),

the Millcreek Township Police, and other law enforcement agencies. Because this Affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact known to this investigation.

### DEFENDANT

4.  Timothy Allen TRESSLER is identified as a white male with the date of birth of June 23, 1984.

5.  A query of the Pennsylvania Department of Transportation (PennDOT) driver license database indicates that the Commonwealth of Pennsylvania has issued a driver's license (OLN:29 199 636) to Timothy Allen TRESSLER (DOB: 06/23/1984) on July 29, 2022. The address of record listed on the license is 3218 West 12th Street, Erie, PA, 16505.

6.  TRESSLER has been identified by investigators by his PA driver license photo, physical surveillance, and from interviewing TRESSLER.

### RELEVANT CRIMINAL STATUTE

7.  Under Title 26 U.S.C. § 5861(d), it is unlawful to possesses a firearm which is not registered to him/her in the National Firearms Registration and Transfer Record[1].

### BACKGROUND ON FEDERAL FIREARMS DEFINITIONS

8.  A "firearm" is defined in 18 U.S.C. § 921(a)(3)(A) as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." This definition includes "the frame or receiver of any such weapon."

9.  A "firearm" under Title 26 is defined in 26 U.S.C. § 5845(a) as (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such

---

[1] The National Firearms Registration and Transfer Record is an ATF maintained database that tracks the registration and transfers of items subject to the provisions of the National Firearms Act.

weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device.

10. A "machinegun" is defined in Title 26 § 5845(b) as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts from which a machinegun can be assembled.

11. An AR-15 style rifle machinegun conversion device (MCD) can be a part, or combination of parts, designed and intended for use in converting a semiautomatic weapon into a machinegun.

12. A "handgun" is defined in 18 U.S.C. § 921 (a)(29) as "(A) a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and (B) any combination of parts from which a firearm described in subparagraph (A) can be assembled."

13. A "Glock Switch"[2] or "auto-switch", is a device that is designed and intended for use in converting a semiautomatic Glock handgun into a machinegun.

14. This affidavit is submitted in support of a criminal complaint charging TRESSLER with Title 26 U.S.C. § 5861(d), Possession of unregistered firearms.

---

[2] A Glock switch is a colloquial term for a machinegun conversion device specific to Glock firearms. ATF has classified Glock switches as machineguns based on the definition under 26 U.S. Code § 5845(b) and 18 U.S. Code § 921(a)(23).

PROBABLE CAUSE

15. On or about April 19, 2024, Customs and Border Protection Officers conducted an examination of an inbound express consignment parcel, at "Gemini Express," an express consignment facility that is a CBP bonded / secured warehouse near JFK International Airport. Both the airport and above facility are recognized by CBP as the functional equivalent of the border (FEB). The parcel had a "USPS (United States Postal Service) Priority Mail" label affixed, which included USPS tracking # eVS (i.e., Electronic Verification System) 9212 4902 4371 2903 6800 57 and was addressed to Timothy Tressler at 3218 W. 12th St, Erie 16505" (the RESIDENCE).

16. CBP records reflect that the parcel was shipped from "Zhang Jian, China Tian Jintian Jin, Shijin Nan Q, Tian Jin, Tian Jin Shi, 300350, China (Mainland)".

17. The shipment was declared as "Carburetor Repair Blocks Fit" with a listed quantity of one (1) and a declared value of $80.00 (USD).

18. An examination of the shipment revealed that the parcel contained 26 drop-in auto-sears and one lightning link.

19. On May 8, 2024, your affiant applied for, and was granted an anticipatory search warrant for 3218 West 12th Street, Erie, Pennsylvania (hereinafter referred to as the "RESIDENCE"), an anticipatory search warrant for the person of Timothy TRESSLER, an electronic tracking warrant, and installation of an electronic alerting device in a parcel of sham MCDs (26 "auto-sears" and 1 "lightning link") that were seized by U.S. Customs and Border Protection. The above was granted under Case Number 24-84 by the Honorable Richard A. Lanzillo.

20. On May 9, 2024, at approximately 12:08 PM, a United States Postal Inspector operating in an undercover capacity, attempted a controlled delivery of the parcel at the RESIDENCE.

The Postal Inspector was unable to make contact with anyone inside the residence. Law enforcement left the parcel on the front step of the RESIDENCE.

21. At approximately 3:30 PM, law enforcement observed Timothy TRESSLER arrive at the RESIDENCE.

22. At approximately 5:11 PM, law enforcement observed a male, later identified as Mike CULLEN, who had previously been working on the roof of the RESIDENCE, pick up the parcel and walk up the west side of the RESIDENCE. Law enforcement was unable to observe CULLEN on the side of the house.

23. Law enforcement was aware of a secondary entrance to the RESIDENCE on the side of the house.

24. A short time later, law enforcement was notified by the electronic alerting device inside the parcel that the parcel had been opened.

25. Your affiant observed two males in the back yard of the RESIDENCE and the residence directly east of the RESIDENCE. Your affiant subsequently watched a male, believed to be TRESSLER, re-enter the house through the side door where CULLEN was observed walking.

26. The tactical team surrounded the residence and began utilizing sirens, lights, and commands over a speaker system for the occupants of the RESIDENCE to surrender. No response was received from any of the residents inside the house. Law enforcement continued to give verbal commands over the loud speak, blare sirens, utilize distraction devices, and repeat verbal commands to surrender, all of which were met with negative response.

27. Law enforcement subsequently breached a window of the house and deployed a robot. Utilizing the robot, law enforcement moved through the house. Law enforcement subsequently

observed TRESSLER pacing nervously around the house. Law enforcement continued to command TRESSLER to surrender. TRESSLER refused to comply.

28. On no less than two occasions, law enforcement observed TRESSLER come to the front door, open it, and then retreat inside. Law enforcement recognizes this behavior as fight or flight.

29. Crisis Negotiators attempted on multiple occasions to call the phone number believed to be associated to TRESSLER with negative results.

30. After approximately 25 minutes, due to TRESSLER's noncompliance, and being considered a barricaded subject, law enforcement was forced to utilize chemical munitions, which resulted in TRESSLER surrendering the residence.

31. During a subsequent *Mirandized* interview of TRESSLER, law enforcement learned that he had disposed of the parcel after opening it. TRESSLER stated that he never took the parcel inside the residence. TRESSLER subsequently showed law enforcement that he had destroyed the parcel in the neighboring yard. Law enforcement subsequently found the GPS Tracking unit that was inside the parcel, submerged in a garbage barrel of water.

32. While in the neighboring yard, law enforcement encountered CULLEN.

33. Special Agent Mike Radens interviewed CULLEN.

34. CULLEN stated that during the day he was working on the roof of the RESIDENCE. After he noticed the parcel on the front porch, he retrieved it, knowing mail is not normally delivered to the front, and hand delivered the parcel to TRESSLER, who was in his vehicle in the driveway in the rear of the RESIDENCE.

35. CULLEN stated, after giving the parcel to TRESSLER, he walked next door to his own residence. CULLEN continued that a short time later TRESSLER banged on CULLEN's back door which was unusual.

36. CULLEN stated TRESSLER was confused by the contents of the parcel, which he was holding, and it had been opened. CULLEN stated TRESSLER was nervous and appeared to be freaking out over the parcel.

37. CULLEN stated he kept several of the parcel's contents (nuts and bolts, used by law enforcement as sham). CULLEN later provided SA Radens with the nuts and bolts from the parcel.

38. CULLEN continued that TRESSLER tossed an unknown black device into a garbage can full of water. The device was later identified as the parcels GPS unit.

39. CULLEN confirmed that TRESSER asked him to burn the remaining cardboard box in his fire pit. CULLEN stated he started a fire to burn the box as well as some other miscellaneous items. The fire had not been burning when Agents arrived.

40. CULLEN was observed by SA Radens in the rear of his residence burning an unknown substance and was instructed to enter his residence due to the police activity. SA Radens was not aware the parcel cardboard was being destroyed.

41. Based on the above facts and circumstances, law enforcement secured the residence and your affiant applied for, and was granted, a search warrant for the RESIDENCE by the Honorable Kezia O. L. Taylor under Case Number 24-85.

42. Law Enforcement executed the search warrant at the RESIDENCE.

43. As a result of the search, law enforcement located and seized indicia indicating TRESSLER as a resident of the RESIDENCE.

44. Law enforcement seized manuals for the conversion of weapons into fully automatic machine guns.

45. Law enforcement also seized (amongst other items) the following items which constitute machineguns:

- (1) DNA Guns Lower Receiver
  Model: DNA-16
  Caliber: 5.56 MM
  S/N: DNA0657
  With a "third hole" had been drilled into the receiver and an "auto-sear" had been installed.

- (1) BCP Lower Receiver
  Model: F-15
  Caliber: Multi
  S/N: F15-00668
  With a "third hole" had been drilled into the receiver and an "auto-sear" had been installed.

- (4) Fostech "Bumpski" bump-stock kits

- (2) Complete Hoffman Super Safety Kits (minus rounded detents)

- (1) Misc. Bump Stock (of unknown manufacture)

- (1) Bump Fire Systems AR-15 Bump Fire Stock

- (12) Hoffman Tactical Super Safety Cam & Levers

- (11) Glock Switches

- (4) Drop-in "Auto Sears"

- (8) Lightning Links & (11) Associated Sear Trip Tabs (constitutes 8 MCDs)

46. Based upon my training, experience, and discussions with other federal agents related to the investigation of National Firearms Act (NFA) violations, I am aware that ATF considers the abovementioned are machinegun conversion devices to be, "post-May 19, 1986, machineguns." In other words, these devices are "machineguns" as defined in 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(23). Apart from official military and law enforcement use, machineguns may only be lawfully possessed by FFLs who have paid the appropriate Special Occupational Tax required of those manufacturing, importing, or dealing in NFA weapons.

47. A query by the ATF of the Federal Licensing System (FLS) revealed that Timothy TRESSLER has not been granted a federal firearms license (FFL) to engage in business as a firearms dealer, nor does he hold a license as a Special Occupational Taxpayer (SOT) to manufacture, import, or deal in NFA items.

48. A query by the ATF of the National Firearm Registration and Transfer Record indicates that TRESSLER is listed as the owner of one (1) machine gun and five (5) firearm suppressors.

49. The above machineguns/MCDs that were seized at TRESSLER's residence are not registered to TRESSLER in the National Firearm Registration and Transfer Record.

50. I believe based on my training, experience, and consultation with Bureau of Alcohol Tobacco Firearms agents that the, seized devices, namely the two (2) Lower Receivers (drilled with "auto-sear" installed), four (4) Fostech "Bumpski" bump-stock kits, (2) two Complete Hoffman Super Safety Kits (minus rounded detents), one (1) Miscellaneous Bump Stock, one (1) Bump Fire Systems AR-15 Bump Fire Stock, (12) Hoffman Tactical Super Safety Cam & Levers, (11) Glock Switches, (4) Drop-in "auto sears", and eight (8) Lightning Links (with 11 associated sear trip tabs) as well as the 26 drop-in auto-sears and one lightning link seized from the parcel, meet the legal definition of "machinegun" as defined under Title 26, United States Code, Section 5485(b), that TRESSLER did possess them, and that they are not registered to TRESSLER in the National Firearms Registration and Transfer Record.

51. Your affiant respectfully submits that based on the above-described evidence, there is probable cause to find that TRESSLER did possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record in violation of Title 26 U.S.C. § 5861(d),

52. The above information is true and correct to the best of my knowledge, information,

and belief.

                                              Respectfully submitted,

                                              */s/ Daniel Williams*
                                              Daniel Williams
                                              Special Agent, HSI

Sworn and subscribed before me, by telephone
Pursuant to Fed.R.Crim.P. 4.1(b)(2)(A)
this 20th day of May 2024.

_____
HONORABLE Richard A. Lanzillo
Chief United States Magistrate Judge